NA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jay Lynn Pember,<br><br>                Plaintiff,<br><br>v.<br><br>Charles L. Ryan, *et al.*,<br><br>                Defendants. | No. CV 17-04069-PHX-JJT (JFM)<br><br>**ORDER** |

Plaintiff Jay Lynn Pember, who is currently confined in the Arizona State Prison Complex-Eyman, has filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983. Before the Court is Plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction (Doc. 78).

**I.     Background**

On screening Plaintiff's Second Amended Complaint (Doc. 73) pursuant to 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated Eighth Amendment medical care claims against Defendants Babich, Gay, Johnson, Hawley, and Does 6-15 in Count Two and ordered them to answer.[1] (Doc. 101.) The Court dismissed the remaining claims and Defendants. (*Id*.)

. . . .

---

[1] The Court gave Plaintiff 60 days to file a notice of substitution substituting the actual names of Does 6--15. (Doc. 101.) Does 6--9 were substituted for their actual names, Gertz, Schmid, Demery, and Torrez, respectively. (*See* Doc. 115.) Does 10--15 were dismissed for failure to timely substitute. (*See* Doc. 130.)

Plaintiff previously filed a "Motion for Temporary Res[t]raining Order and Preliminary Injunction" (Docs. 15, 19), a "Motion for Order-Access to Legal Supplies" (Doc. 25), and a "Motion for Temporary Restraining Order and Preliminary Injunction" (Doc. 29). In the motions for injunctive relief, Plaintiff sought a Court Order directing Defendants to provide him adequate pain medication, to take him to an outside neurosurgeon, and to give him access to legal supplies. (Doc. 54.) In an October 29, 2018 Order (Doc. 54), the Court denied Plaintiff's motions for injunctive relief. In denying Plaintiff's motions, the Court found that the evidence showed Plaintiff had been taken to see a neurologist on August 3, 2018, additional consult requests had been submitted pursuant to the neurologist's recommendations, Plaintiff's pain was being treated with Meloxicam, and Plaintiff's right to access the courts had not been violated. (Doc. 54.) However, the Court denied the motions with leave to re-file if Plaintiff's pain medication was again discontinued; if he was not scheduled for an EMG, MRI, and physical therapy as recommended by Dr. Feiz-Erfan; and/or if he was not scheduled for a neurosurgery follow-up as recommended. (*Id.*)

Subsequently, on January 30, 2019, Plaintiff filed a Motion for a Temporary Restraining Order and a Preliminary Injunction (Doc. 78).

**II.     Preliminary Injunction Legal Standard**

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary injunction is an extraordinary remedy never awarded as of right"). A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. "But if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the

merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under this serious questions variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072.

Regardless of which standard applies, the movant "has the burden of proof on each element of the test." *See Envtl. Council of Sacramento v. Slater,* 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000). Further, there is a heightened burden where a plaintiff seeks a mandatory preliminary injunction, which should not be granted "unless the facts and law clearly favor the plaintiff." *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1441 (9th Cir. 1986) (citation omitted).

The Prison Litigation Reform Act imposes additional requirements on prisoner litigants who seek preliminary injunctive relief against prison officials and requires that any injunctive relief be narrowly drawn and the least intrusive means necessary to correct the harm. 18 U.S.C. § 3626(a)(2); *see Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

A court may issue an injunction against a non-party only where the non-party acts in active concert or participation with an enjoined party. Fed. R. Civ. P. 65(d)(2) (a preliminary injunction only binds those who receive actual notice of it by personal service or are parties, their officers, agents, servants, employees, and attorneys, and persons in active concert); *see Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1984) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court."); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969).

An injunction should not issue if it "is not of the same character, and deals with a matter lying wholly outside the issues in the suit." *Kaimowitz v. Orlando*, 122 F.3d 41, 43

(11th Cir. 1997). But if the request for relief concerns the prisoner's access to the courts, "a nexus between the preliminary relief and the ultimate relief sought is not required." *Prince v. Schriro, et al.*, CV 08-1299-PHX-SRB, 2009 WL 1456648, at *4 (D. Ariz. May 22, 2009), citing *Diamontiney v. Borg*, 918 F.2d 793, 796 (9th Cir. 1990).

**III.     Request for Medical Treatment**

    **A.     Relevant Facts**

Plaintiff has stocking/glove peripheral neuropathy, epilepsy with petit-mal seizures, and a cervical impingement. (Doc. 78 ¶ 24.) Plaintiff was taking Gabapentin, which has since been discontinued for alleged drug-abuse, to control his petit-mal seizures and neuropathy pain. (*Id*. ¶ 10.) Plaintiff has taken Gabapentin for several years, and it is the most effective medication to treat neuropathy and epilepsy. (*Id.* ¶ 20.) On August 3, 2018, Plaintiff attended an outside neurosurgical consultation with Dr. Iman Feiz-Erfan at Maricopa Integrated Health System. (Doc. 85 at 3, 29.) Dr. Feiz-Erfan's recommended treatment plan was for Plaintiff to undergo an EMG study of the bilateral upper extremities and lower extremities, obtain a cervical and lumbar spine MRI without contrast, and start physical therapy for his neck, back, and left arm and leg pain. (*Id*. at 31.) Upon completion of these recommendations, Plaintiff was instructed to return for a follow-up in two months. (*Id*. at 31-32.) Dr. Feiz-Erfan's recommendation did not include any medications. (*See id*. at 32.)

On August 7, 2018, ASPC-Eyman Defendant Johnson submitted a consultation request for an EMG, a cervical and thoracic spine MRI, and physical therapy pursuant to Dr. Feiz-Erfan's recommendations, with a note to schedule a neurosurgery follow-up once these have been completed. (*Id.* at 36.) Johnson also issued a Special Needs Order (SNO) for side restraints. (*Id*.) On September 11, 2018, Dr. Ramirez issued an alternative treatment plan (ATP) for the neurologist's recommendations, directing that Plaintiff wait for the results from the MRI before getting an EMG. (*Id.* at 42.) On September 17, 2018, an MRI was conducted of Plaintiff's cervical spine. (*Id.* at 4.)

. . . .

On September 26, 2018, Plaintiff was evaluated by physical therapy, and it was recommended that he receive six to eight physical therapy visits. (*Id.* at 4, 50.) On October 11, 2018, an ATP was issued for the physical therapy recommendation; instead of formal physical therapy, the ATP called for Plaintiff to have home exercise program directed therapy in the medical unit. (*Id.* at 4-5, 52-53.) On November 20, 2018, Plaintiff saw Nurse Practitioner Weigel and requested an increase in his Gabapentin dosage and a SNO for a typewriter. (*Id.* at 5.) Weigel increased Plaintiff's Gabapentin dosage and told Plaintiff that she could not issue a SNO for a typewriter because it was not considered a medical tool. (*Id.*)

On December 3, 2018, Plaintiff had a chronic care visit with Weigel, and Weigel ordered HCV labs and a subsequent Gabapentin draw to measure the levels of Gabapentin in Plaintiff's system. (Doc. 85 at 5.) Plaintiff told "A.D.O.C." that he would test positive for opiates because he was prescribed Tylenol 3, which contains codeine. (Doc. 78 ¶ 6.) Plaintiff's urine tested positive for morphine, and he received two disciplinary tickets. (*Id.* ¶ 7.) The disciplinary hearing officers refused to consider evidence from a medical dictionary stating that codeine is derived from morphine. (*Id.* at 3.) Plaintiff filed a grievance regarding these tests because they were not "performed per policy" and were "contaminated" because a corrections officer ordered Plaintiff to use a used urine test cup. (*Id.* ¶ 14.)

On December 13, 2018, Plaintiff's labs were drawn to determine his Gabapentin levels. (Doc. 85 at 5.) On January 26, 2019, Weigel discontinued Plaintiff's Gabapentin prescription because his levels did not match his prescribed dose and prescribed him codeine/acetaminophen. (*Id.*) Plaintiff claims that his levels were all "within their clinical level range" and that there was "no evidence of drug abuse." (Doc. 78 ¶ 8.) Gabapentin levels should be between 2 and 19, and Plaintiff's level was 2.1. (*Id.* ¶ 18.) Plaintiff claims that medications are not delivered consistently, are mixed up, and are often forgotten by new employees, which could "change test results." (*Id.* ¶ 21.) Plaintiff also states that per ADC policy, when a medication is discontinued, the dosage should be decreased to allow

the patient to ween off of it, but Plaintiff's Gabapentin was discontinued abruptly. (*Id.* ¶ 20.)

Plaintiff further claims that he has hepatitis C and the December 3, 2018, blood test results showed his liver function was a 7.8. (*Id.* ¶ 18.) Plaintiff asserts that a result above 2 requires further testing and treatment. (*Id.*) When Plaintiff asked about that result, Weigal told Plaintiff that she would re-test his blood, but not the Gabapentin level. (*Id.* ¶ 21.) Plaintiff claims that if any result is in question from a certain blood test, all of the results should be in question and be re-tested. (*Id.*)

On January 15, 2019, Nurse Practitioner Avant-Ortiz saw Plaintiff regarding his lower back pain, and Plaintiff reported that he had "difficulty ambulating, decreased range of motion, myalgia, arthralgia, numbness, tingling, weakness and pain." (Doc. 85 at 5-6.) Avant-Ortiz requested an EMG and an MRI of Plaintiff's lumbar spine without contrast, noted that she would place an order for physical therapy after testing was completed and the neurosurgeon had an opportunity to review the results, and stated that she would send the results of the scans to the neurologist and schedule Plaintiff a follow-up appointment with the neurologist after receiving the results. (*Id.* at 92.) Defendants claim that the EMG and MRI of the lumbar spine consult requests were "initiated by the clinical coordinator." (*Id.* at 6.) On July 25, 2019, Plaintiff filed a Motion for Extension that states that the EMG had been completed, but the MRI of his lumbar spine was outstanding, he had not completed any physical therapy sessions, and no referral to the neurologist was pending. (*See* Doc. 143 at 1-2.)

Plaintiff seeks a Court order directing Defendants to show cause why his Gabapentin was discontinued and why they have not carried out Dr. Feiz-Erfan's recommendations. (*Id.* at 6.) Plaintiff claims that as of January 4, 2019, there were no pending referrals, as recommended by Dr. Feiz-Erfan. (*Id.* ¶ 1.) Plaintiff asserts that Corizon had a custom and practice of "rubber stamp[ing]" recommendations and instead prescribing an ATP in an attempt to "delay and deny medical care." (*Id.* ¶ 3.) Plaintiff states that prescribing an ATP "means [providing] no treatment at all." (*Id.*) Plaintiff has gone to

- 6 -

medical numerous times requesting the imaging recommended by Dr. Feiz-Erfan, but states "if there is no diagnosis, they don't have to treat anything." (*Id.*) Plaintiff claims that the pain in his hands will increase, and his seizures "will also increase." (*Id.* ¶ 13.) Plaintiff must use both hands to write because his dominant hand is in pain and is numb and weak. (*Id.*) Plaintiff's hands "feel like they are burning" when he is not medicated. (*Id.*) Plaintiff's "pains are unbearable," and "he will lose his mobility[] once the Gabapentin is out of his system." (*Id.* ¶ 25.)

### B. Analysis

#### 1. Likelihood of Success /Serious Questions

To establish a likelihood of success on the merits of an Eighth Amendment medical care claim, a prisoner must demonstrate "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The prisoner must show (1) that his condition constitutes a "serious medical need" and (2) that the defendant's response to that need was deliberately indifferent. *Jett*, 439 F.3d at 1096.

Defendants do not argue that Plaintiff's condition does not constitute a serious medical need. (*See* Doc. 85.) Further, the record shows that Plaintiff has been diagnosed with neuropathy, degenerative disc disease, chronic neck and back pain, and radiculopathy; that his conditions have been worthy of treatment, and that he has reported pain, burning, and numbness. *See McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992) (examples of indications that a prisoner has a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain"), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997). Plaintiff therefore demonstrates that his condition constitutes a serious medical need.

With respect to the second prong, "prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with

medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted). Deliberate indifference may also be established where a prisoner shows that doctors chose a course of treatment that was "medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *see Jett*, 439 F.3d at 1097–98 (jury could find deliberate indifference where the prison doctor was aware that the plaintiff needed to see an orthopedist for treatment and the plaintiff was not taken to the orthopedist for 6 months). The Ninth Circuit and other courts have routinely found that failure to follow a specialist's recommendation may amount to a course of treatment that is medically unacceptable. *See Colwell v. Bannister*, 763 F.3d 1060, 1069 (9th Cir. 2014) (denying summary judgment where prison officials "ignored the recommendations of treating specialists and instead relied on the opinions of non-specialist and non-treating medical officials who made decisions based on an administrative policy"); *Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012) (where the treating physician and specialist recommended surgery, a reasonable jury could conclude that it was medically unacceptable for the non-treating, non-specialist physicians to deny recommendations for surgery), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014); *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999) (the defendant physician's refusal to follow the advice of treating specialists could constitute deliberate indifference to serious medical needs); *McNearney v. Wash. Dep't of Corrs.*, C11-5930 RBL/KLS, 2012 WL 3545267, at *26 (W.D. Wash. June 15, 2012) (in granting a preliminary injunction for specialist treatment, the district court found that the prisoner plaintiff showed a likelihood of success on the merits of her Eighth Amendment claim where the defendants failed to follow an orthopedic surgeon's strong recommendation for further orthopedic evaluation). In addition, a failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989) ("access to medical staff is meaningless unless that staff is competent and

can render competent care"); *see Estelle*, 429 U.S. at 105 & n. 10 (the treatment received by a prisoner can be so bad that the treatment itself manifests deliberate indifference); *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000) (prisoner does not have to prove that he was completely denied medical care).

### a. Specialist Recommendations

The medical records show that the treating neurosurgeon, Dr. Feiz-Erfan, recommended an MRI of Plaintiff's cervical and lumbar spine without contrast; an EMG study of Plaintiff's bilateral upper and lower extremities; physical therapy for neck, back, and left arm and leg pain, and a follow-up visit with him "in about 2 months (around 10/3/2018)." (Doc. 85 at 31-32.) An MRI of the cervical spine was completed on September 17, 2019, and Plaintiff had a physical therapy evaluation on September 26, 2018. (*Id.* at 9.) Defendants allege that an MRI of the lumbar spine and an EMG were requested and initiated. (*Id.*) Defendants therefore maintain that there is no evidence that Defendants have been substantially indifferent to Plaintiff's serious medical needs, that "Plaintiff has been continuously treated for his medical complaints," and that he cannot show a likelihood of success on the merits. (*Id.* at 10.)

There is no evidence that Plaintiff has received the recommended MRI of the lumbar spine or physical therapy or that Plaintiff has returned to see Dr. Feiz-Erfan for a follow-up visit.[2] On this record, there are serious questions whether Defendants' failure to follow the treating specialist's recommendations was medically unacceptable. *See Alliance for the Wild Rockies*, 632 F.3d at 1135 (under the sliding-scale test, a court may issue a preliminary injunction if the plaintiff demonstrates "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff"); *see also Republic of the Phil. v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) ("[s]erious questions need not promise a certainty of success, nor even present a probability of success, but must involve a fair chance of success on the merits") (internal quotation omitted).

---

[2] On July 25, 2019, Plaintiff filed a Motion for Extension (Doc. 143) in which he indicates, however, that the EMG was completed.

- 9 -

### b. Pain Management

The medical records show that Plaintiff's Gabapentin prescription was discontinued on January 26, 2019, because Nurse Practitioner Weigel found that Plaintiff's lab levels did not match his prescribed dose, and the "low levels indicat[ed] potential abuse of the drug." (Doc. 85 at 9.) On the same day, Weigel prescribed Plaintiff codeine/acetaminophen. (*Id.*) ADC indicates in its Response that, as of February 14, 2019, Plaintiff was prescribed codeine/acetaminophen. (Doc. 89 at 3.) Plaintiff states in his Reply that "Corizon has consistently discontinued [his] pain medication," and as of February 27, 2019, he was not receiving any prescribed pain medication. (Doc. 100 at 1, 5.) Plaintiff states that Weigel discontinued his prescription for Meloxicam on February 10, 2019, and his prescription for Tylenol-3 was discontinued on February 27, 2019. (*Id.* at 5; Doc. 92 at 4.) Consequently, there are serious questions whether Defendants' treatment of Plaintiff's pain was medically acceptable. Accordingly, Plaintiff satisfies the first *Winter* factor.

### 2. Irreparable Injury

Plaintiff must demonstrate that absent an injunction, he will be exposed to irreparable harm. *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th 1988) (speculative injury is not irreparable injury sufficient for a preliminary injunction); *see Winter*, 555 U.S. at 22. To support a mandatory preliminary injunction for specific medical treatment, a plaintiff must demonstrate ongoing harm or the present threat of irreparable injury, not a past injury. *See Conn. v. Mass.*, 282 U.S. 660, 674 (1931) (an injunction is only appropriate "to prevent existing or presently threatened injuries"); *Caribbean Marine*, 844 F.2d at 674. "[T]here must be a presently existing threat of harm, although injury need not be certain to occur." *Villaneuva v. Sisto*, CIV S-06-2706 LKK EFB P, 2008 WL 4467512, at *3 (E.D. Cal. Oct. 3, 2008) (citing *FDIC v. Garner*, 125 F.3d 1272, 1279–80 (9th Cir. 1997)). Pain can constitute irreparable harm. *See Rodde v. Bonta*, 357 F.3d 988, 999 (9th Cir. 2004) (irreparable harm includes delayed and/or complete lack of necessary treatment, and increased pain); *McNearney*, 2012 WL 3545267, at *14 (finding a likelihood of irreparable injury where the plaintiff's medical condition predated

her incarceration and had not worsened, but the evidence showed that she continued to suffer unnecessary pain due to the defendants' inadequate treatment plan); *Von Collin v. Cnty. of Ventura*, 189 F.R.D. 583, 598 (C.D. Cal. 1989) ("Defendants do not argue that pain and suffering is not irreparable harm, nor could they").

### a. Specialist Recommendations

At the time he filed his Motion, Plaintiff was suffering pain, weakness, and numbness. (*See* Doc. 78 ¶ 13.) Defendants stated in their Response that "consult requests have been initiated by the clinical coordinator"; however, there is no evidence to support that the outstanding specialist recommendations have been executed. On July 25, 2019, Plaintiff filed a Motion for Extension indicating that he still had not received an MRI of his lumbar spine, completed any physical therapy, or had a follow-up visit with the neurologist. On this record, Plaintiff's allegations that Defendants have yet to execute the specialist's recommendations and that he is still in pain are enough to show he faces a threat of irreparable harm.

### b. Pain Management

As noted above, Plaintiff was suffering pain, weakness, and numbness when he filed his Motion. (*See* Doc. 78 ¶ 13.) In their Response, Defendants state that Nurse Practitioner Weigel prescribed Plaintiff codeine/acetaminophen on January 26, 2019. (Doc. 85 at 5.) In his Reply, filed on February 27, 2019, Plaintiff indicates that he is "suffering" with "increased intense pain" because his prescribed pain medications were discontinued. (Doc. 100 at 1, 4-5.) However, Plaintiff's statements as to his pain management in January and February 2019 are insufficient to establish whether there is presently an ongoing harm or threat of irreparable injury. Nor does the Court have any information as to Defendants' current conduct with respect to Plaintiff's pain management. *See Farmer*, 511 U.S. at 845 (a defendant's current conduct determines whether injunctive relief is warranted).

Accordingly, the Court will grant Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction as to his request for Gabapentin to the extent it will direct

Defendants to file a notice specific to Plaintiff's current pain management; in all other respects, this portion of the Motion will be denied.

### 3. Balance of Hardships and Public Policy – Specialist Recommendations

Because Plaintiff has shown serious questions going to the merits of his claims, he must also show that the balance of the hardship tips sharply in his favor and the other *Winter* factors are met. *Alliance for the Wild Rockies*, 632 F.3d at 1135. Defendants do not suggest that providing Plaintiff with an MRI of his lumbar spine, physical therapy, and a follow-up appointment with the neurologist outweighs the hardship to Plaintiff of suffering continued pain, numbness, and weakness. Moreover, the Ninth Circuit has held that the interest in protecting individuals from physical harm outweighs a government entity's monetary costs in providing relief. *See Harris v. Bd. of Supervisors, L.A. Cnty.*, 366 F.3d 754, 766 (9th Cir. 2004) ("faced with a conflict between financial concerns and preventable human suffering, [the court has] little difficulty concluding that the balance of hardships tips decidedly in plaintiff's favor") (internal quotation omitted). Based on this principle, the balance of the hardships here—as evidenced by Plaintiff's continued pain and increased disability—tips sharply in Plaintiff's favor, and it is in the public interest to order some form of preliminary injunctive relief. *See United States v. Raines*, 362 U.S. 17, 27 (1960) (the protection of constitutional rights is a compelling public interest that must be considered in the balancing of hardships).

### 4. Requested Relief – Specialist Recommendations

The Court must next determine whether the relief Plaintiff requests is narrowly drawn and the least intrusive means necessary to correct the harm. 18 U.S.C. § 3626(a)(2). In this case, the evidence shows that Plaintiff's request for Defendants to execute Dr. Feiz-Erfan's recommendations has at least been partially met by the MRI of his cervical spine, EMG, and physical therapy consultation. There is no evidence, however, that Plaintiff is scheduled for physical therapy sessions, an MRI of his lumbar spine, or any other follow-up care, and the evidence Plaintiff provided indicates that his pain and disabilities have not

been treated. On this record, the least intrusive relief available is to order Defendants to transport Plaintiff to have an MRI on his lumbar spine taken, provide Plaintiff with physical therapy, and take Plaintiff to a follow-up appointment with Dr. Feiz-Erfan. This relief goes no farther than the specialist's recommendations.

Accordingly, the Court will grant Plaintiff's Motion to the extent that it will order Defendants within 20 days of this Order to produce evidence that (1) Plaintiff **either** is currently receiving physical therapy, **or** such relief is no longer medically indicated, (2) Plaintiff has received an MRI of his lumbar spine, or that an MRI of the lumbar spine is no longer medically-indicated, **and** (3) Plaintiff has seen or is scheduled to see Dr. Feiz-Erfan for a follow-up evaluation and recommended care.

**III.    Request for Typewriter**

Plaintiff also asks the Court to order Defendants to give him access to "auxiliary aids." (Doc.78 at 6.) Plaintiff asks for a typewriter because he will soon be unable to handwrite his legal documents due to the pain and weakness in his hands caused by neuropathy. (*Id.* ¶ 13, 25.) Plaintiff states that he will purchase the typewriter himself and that, per ADC policy, he is allowed to have a typewriter. (*Id.* ¶¶ 26-27.)

Defendants cite several reasons why the Court should deny Plaintiff's request for a typewriter. (Doc. 85 at 9.) Defendants argue that the typewriter request should be denied because (1) the request for a typewriter is outside the scope of the Second Amended Complaint; (2) the ADC is not a defendant in this action; (3) Plaintiff has not shown a medical necessity for a typewriter; and (4) Plaintiff has not provided evidence that he is unable to write in support of his claims. (*Id.*)

Non-party ADC also filed a Response citing several reasons why the Court should deny Plaintiff's request for a typewriter. (Doc. 96.) ADC asserts that DO 902-3.3.6 charges the ADC's Legal Access Monitor with "[e]nsuring accommodations and arrangements are being made for special needs inmates," which means that before an inmate seeks court intervention, he should request the accommodation from the ADC's Legal Access Monitor. (*Id.*) ADC argues that Plaintiff has not shown he has pursued available prison

administrative remedies for a typewriter or some other appropriate accommodation. (*Id*.) ADC also argues that the typewriter request should be denied because (1) the request is outside the scope of the allegations in his Second Amended Complaint; (2) Plaintiff has not shown a medical necessity for a typewriter such that it would be medically appropriate for ADC to provide the requested relief; and (3) Plaintiff has shown that he is able to handwrite legible documents to be filed with the Court. (*Id.*)

In his Reply, Plaintiff states that ADC and Corizon "conspired together against [him] in retaliation for his complaints, litigation and persistence to receive medical care." (Doc. 92 at 3.) Plaintiff's claim of retaliation by ADC and Corizon appears to be based on the allegation that ADC gave Plaintiff disciplinary tickets because his urine test, which was taken by Corizon, came back positive for opiates. (*Id.*) Plaintiff claims that ADC and Corizon accused him of drug abuse without evidence and that he filed grievances against ADC and Corizon alleging retaliation and excessive drug testing. (*Id.*) Plaintiff also states that he was previously able to handwrite documents because he was on pain medication, but those medications have since been discontinued. (*Id.* at 5.) In his second Reply, Plaintiff asserts that in a prior case, *Pember v. Ryan, et al.*, CV 11-02332-PHX-SMM, Senior District Judge McNamee denied Plaintiff's request for a typewrite because counsel was appointed to represent Plaintiff in that matter, and Judge McNamee stated that Plaintiff could renew his motion for a typewriter if Plaintiff was no longer represented by counsel. (Doc. 100 at 4.) Plaintiff provided evidence that Ernest Trujillo, the Norther Regional Operation Director, responded to Plaintiff's letter and stated that Plaintiff will be escorted to a designated location with a typewriter to work on his legal issues and that if Plaintiff purchased his own typewriter, he would be issued "a property received form stating that [he] can have it in his cell." (*Id.* at 35.) Trujillo and Director Ryan later responded that Plaintiff would not be allowed to possess a loaner typewriter because the loaner typewriter "was taken from [Plaintiff] due to a motion from the courts denying your request to have the typewriter." (*Id.* at 31, 33.)

. . . .

As a preliminary matter, although Plaintiff's underlying claim is an Eighth Amendment medical care claim, his request for a typewriter relates to his alleged inability to draft legal documents and litigate this action, i.e., his access to the court. "[W]here preliminary relief is directed to the prisoner's access to the Courts, a nexus between the preliminary relief and the ultimate relief sought is not required." *Prince v. Schriro, et al.*, CV 08-1299-PHX-SRB, 2009 WL 1456648, at *4 (D. Ariz. May 22, 2009) (citing *Diamontiney v. Borg*, 918 F.2d 793, 796 (9th Cir. 1990)).

While there is a constitutional right of access to the courts, *Bounds v. Smith*, 430 U.S. 817, 821 (1977), there is no constitutional right to a typewriter in prison. *Lindquist v. Idaho State Bd. of Corr.*, 776 F.2d 851, 858 (9th Cir. 1985). The Ninth Circuit has held that inmates have no right to a typewriter to prepare legal documents as long as there remains some other means of preparing legal documents. *Phillips v. Hust*, 477 F.3d 1070, 1077 (9th Cir. 2007), *vacated on other grounds*, 555 U.S. 1150 (2009). To maintain an access-to-courts claim, an inmate must submit evidence showing an "actual injury" resulting from the defendant's actions. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). With respect to an existing case, the actual injury must be "actual prejudice . . . such as the inability to meet a filing deadline or to present a claim." *Id.* at 348-49.

Plaintiff has failed to show a likelihood of success on the merits or irreparable injury as it pertains to an access-to-courts claim. There is no evidence that Plaintiff has faced an unreasonable delay or the inability to file anything in this action. A review of the docket in this matter reflects that Plaintiff has filed numerous motions and responses in this action, several of which were filed *after* Plaintiff filed his Motion for a Temporary Restraining Order and a Preliminary Injunction and Reply, and are all of these documents are legible.[3] Thus, Plaintiff has not established actual injury on this record. Also, Plaintiff has not shown that he faces irreparable injury to his ability to litigate absent a typewriter or that a typewriter is the least intrusive means necessary to correct the alleged harm.

. . . .

---

[3] *See* Docs. 103, 104, 105, 106, 111, 113, 114, 116, 129, 143, 148, 150.

- 15 -

Additionally, even though Plaintiff may be entitled to relief even for claims not pled in the Complaint where his access to the Court is at stake, Plaintiff seeks injunctive relief against ADC—a non-party—but Plaintiff has made no showing that ADC is acting in active concert or participation with the Defendants. Plaintiff's new allegations of retaliation and conspiracy do not give the Court jurisdiction over ADC because there is no evidence that ADC and Corizon were acting in active concert or participation with each other regarding matters in this lawsuit. As such, it appears that the Court lacks jurisdiction to issue the relief Plaintiff seeks. Lastly, the proceedings in Plaintiff's prior case, CV 11-02332, do not show that Plaintiff is entitled to a typewriter in this action. Accordingly, Plaintiff's Motion will be denied as to his request for a typewriter.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 78).

(2) Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction is **denied** as to Plaintiff's request for a typewriter; the Motion is **granted** to the extent set forth in this Order as to Plaintiff's request that Defendants execute Dr. Feiz-Erfan's recommendations; and the Motion is **granted** as to Plaintiff's request that Defendants renew his Gabapentin prescription to the extent the Court will require Defendants to file a notice with the Court regarding Plaintiff's pain management; in all other respects, that portion of the Motion is **denied**.

(3) Within **20 days** of the date of this Order, Defendants must file a notice with documentary evidence indicating Plaintiff's condition at the present time and his current course of treatment, specifically pertaining to pain management.

. . . .

. . . .

. . . .

. . . .

. . . .

     (4)    Within **20 days** of this Order, Defendants must file a Notice with the Court, showing that (1) Plaintiff **either** is currently receiving physical therapy, or such relief is no longer medically indicated, (2) Plaintiff has received an MRI of his lumbar spine, or that an MRI of the lumbar spine is no longer medically-indicated, **and** (3) Plaintiff has seen or is scheduled to see Dr. Feiz-Erfan for a follow-up evaluation and recommended care.

Dated this 27th day of August, 2019.

*[signature]*
Honorable John J. Tuchi
United States District Judge